Moss, Judge,
delivered the opinion of the court:
The plaintiff, John F. Jelke Co., during the years 1920 to 1924, inclusive, and for many years theretofore, manufactured and sold to bakers a cooking compound designated and known to the trade as “ Bakers’ Select,” upon which product plaintiff has continuously paid a tax of one-fourth cent per pound under what is called the oleomargarine act of August 2, 1886.
In 1924 plaintiff filed claims for the refund of taxes aggregating $16,162.50 on the ground that its product did not come within the provisions of the oleomargarine act and was therefore exempt from taxation. These claims were rejected by the Commissioner of Internal Revenue, and this action is for the recovery of said sum.
Section 2 of the act of August 2, 1886, known as the oleomargarine act (24 Stat. 209), provides as follows:
“ That for the purposes of this act certain manufactured substances, certain extracts, and certain mixtures and compounds, including such mixtures and compounds with butter, shall be known and designated as ‘oleomargarine,’ namely: All substances heretofore known as oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine, and neutral; all mixtures and compounds of oleomargarine, oleo, oleomargarine oil, butterine, lardine, suine, and neutral; all lard extracts and tallow extracts; and all mixtures and compounds of tallow, beef fat, suet, lard, lard oil, vegetable oil, annatto, and other coloring matter, intestinal fat, and offal fat made in imitation or semblance of butter, or when so made, calculated or intended to be sold as butter or for butter.”
Section 8 of said act, as amended by section 3 of the act of May 9,1902, 32 Stat. 193, is the provision of law under which the tax in this case was collected. It is as follows:
“That upon oleomargarine which shall be manufactured and sold, or removed for consumption or use, there shall be assessed and collected a tax of ten cents per po'und to be paid by the manufacturer thereof; and any fractional j)art of a pound in a package shall be taxed as a pound: Provided, When oleomargarine is free from artificial coloration that causes it to look like butter of any shade of yellow said tax shall be one-fourth of one cent per pound. The tax levied by this section shall be represented by coupon stamps; *377 and the provisions of existing laws governing the engraving, issue, sale, accountability, eifacement, and destruction of stamps relating to tobacco and snuff, as far as applicable, are hereby made to apply to stamps provided for by this section.”
It is the contention of the Government that the determination by the commissioner of the question involved herein is final and conclusive under section 14 of the act of August, 1886, above mentioned. That section is as follows:
“ That there shall be in the office of the Commissioner of Internal Revenue an analytical chemist and a microscopist, who shall each be appointed by the Secretary of the Treasury, and shall each receive a salary of two thousand five hundred dollars per annum; and the Commissioner of Internal Revenue may, whenever in his judgment the necessities of the service so require, employ chemists and microscopists, to be paid such compensation as he may deem proper, not exceeding in the aggregate any appropriation made for that purpose. And such commissioner is authorized to decide what substances, extracts, mixtures, or compounds which may be submitted for his inspection in contested cases are to be taxed under this act; and his decision in matters of taxation under this act shall be final. The commissioner may also decide whether any substance made in imitation or semblance of butter and intended for human consumption contains ingredients deleterious to the public health; but in case of doubt or contest his decision in this class of cases may be appealed from to a board hereby constituted for the purpose and composed of the ^Surgeon General of the Army, the Surgeon General of the Navy, and the Commissioner (now Secretary) of Agriculture; and the decisions of this board shall be final in the premises.”
The ingredients used in the manufacture of plaintiff’s product are cottonseed oil, 40 per cent; oleostearin, 23 per cent; and the remainder, skim milk. A small per cent of salt is added after the above ingredients are mixed.
The manufacture of plaintiff’s product is accomplished by mixing cottonseed oil, oleostearin, and skim milk in .the proportions named above, and in large quantities, in a container in which the materials are churned until the ingredients are thoroughly mixed. As it flows out of the container it strikes cold water, which causes it to congeal. It is then drained and placed in a cool storage room for about 24 hours. *378 A certain quantity of salt is then added to the mixture as it passes through several sets of rollers. This manipulation works out the water as it works in the salt. It is then ready for packing and preparation for market. The finished product has a lactic-acid flavor and aroma. The same flavor and aroma are found in butter, although it is not the dominant or distinguishing characteristic of butter.
It will be noted that cottonseed oil (vegetable oil) and oleostearin (beef fat) are specifically mentioned in section 2 of the oleomargarine act.
Plaintiff’s product is taxable if (a) “made in imitation or semblance of butter,” or (Z>) “ when so made, calculated or intended to be sold as or for butter.” It is not necessary that both conditions be present. If “made in imitation or semblance of butter ” it is subject to tax under the oleomargarine act, and that seems to be the sole question for determination.
Obviously the purpose of the oleomargarine act is to impose a tax on all fat mixtures and compounds composed of the ingredients specified in section 2 of said act if made in imitation or semblance of butter. Water may be used instead of skim milk, and the product would, for all practical purposes, be identical with that produced by the use of skim milk. What, then, could be the purpose of using the more expensive mixing medium, except to obtain the slight butter semblance resulting from the use of .skim milk? Plaintiff's product was subjected to a chemical analysis by the Commissioner of Internal Revenue, who held that it had a semblance of butter and was therefore taxable. Congress definitely specified in unmistakable terms the powers of the commissioner in this regard. The “ commissioner is authorized to decide what substances, extracts, mixtures, or compounds which may be submitted for his inspection in contested cases are to be taxed under this act [sec. 14 of the oleomargarine act], and his decision in matters of taxation under this act shall be final.” Undoubtedly Congress must have realized the difficulty which the commissioner might experience in the administration of the oleomargarine act, and it therefore provided for an analysis of mixtures and com *379 pounds mentioned in the act by a specific agency to determine the taxability of same within the meaning of the act.
Without determining whether or not the ruling of the commissioner under this act would in all cases be final, certainly the conclusion reached by him in the instant case is amply justified by the facts, and in the absence of any suggestion that his action herein was arbitrary or capricious his ruling should be regarded as final.
It is therefore the judgment of the court that plaintiff’s petition should be, and the same is hereby, dismissed. And it is so ordered.
GRAjham, Judge; Hat, Judge; Booth, Judge; and Campbell, Chief Justice, concur.